IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

---------------------------------------------------------X

Patrick Cullen Fahey III,              :

                    Plaintiff,          :        Civil Action No. _8:16-CV-2591-_
                                        :                         HMH-KFM
                                        :
                                        :        COMPLAINT
     -against-                          :
                                        :
CLEMSON UNIVERSITY, CLEMSON             :
UNIVERSITY BOARD OF TRUSTEES,           :        (Jury Trial Demanded)
JAMES P. CLEMENTS, individually and     :
as agent for Clemson University, JASON  :
RICHARD THRIFT, individually and as     :
agent for Clemson University, MISTY     :
KEY SEABORN, individually and as        :
agent for Clemson University, LENA      :
BURGESS CAMPBELL, individually          :
and as agent for Clemson University,    :
SHERI SMITH WEBSTER, individually       :
and as agent for Clemson University,    :
MARGARET ANN WETSEL,                    :
individually and as agent for Clemson   :
University, LINDSEY MONTJOY             :
individually and as agent for Clemson   :
University, CATHERINE SIKKEMA          :
MURTON, individually and as agent for   :
Clemson University, MARGARET            :
CAMP individually and as agent for      :
Clemson University, JERRY               :
KNIGHTON individually and as agent      :
for Clemson University, ALESIA          :
SMITH individually and as agent         :
for Clemson University                  :
                                        :
                                        :
                                        :
                    Defendants.         :
---------------------------------------------------------X

I, Patrick Cullen Fahey III, (hereinafter referred to as "Plaintiff"), respectfully allege as follows:

## THE NATURE OF THIS ACTION

1.      This case arises out of the actions taken and procedures employed by Defendants Clemson University ("Clemson" or the "University"), Clemson University Board of Trustees ("Defendant Board of Trustees"), James P. Clements ("Defendant Clements"), Jason Richard Thrift ("Defendant Thrift"), Misty Key Seaborn ("Defendant Seaborn"), Lena Burgess Campbell ("Defendant Campbell") Sheri Smith Webster ("Defendant Webster"), Margret Ann Wetsel ("Defendant Wetsel"), Lindsey Montjoy ("Defendant Montjoy"), Catherine Sikkema Murton, ("Defendant Murton"), Margaret Camp ("Defendant Camp"), Jerry Knighton ("Defendant Knighton"), and Alesia Smith ("Defendant Smith"), (collectively, "Defendants") concerning allegations made against Plaintiff, a (heterosexual, white, male) student in the accelerated second degree nursing program at Clemson as a result of false allegations of breach of school's code of conduct and dismissal for interruption, being in ones personal space, patient neglect, and hostility towards a nurse in front of patient during clinical rotations while under supervision of Clemson faculty.

2.      The allegations involving Patrick Cullen Fahey III purportedly refer to what was clearly targeting of faculty and staff after refusal of ADD accommodations and failure of explaining CAPS's ability to render those same accommodations for non-violent related PTSD.

3.      On August 27, 2015 The Plaintiff met with Student Accessibility Services Director Margret Camp with documentation regarding ADHD accommodations. The plaintiff mentioned PTSD; however, was not informed that of the schools policy affords accommodations

for PTSD and can self-diagnosis within Clemson's medical staff. The Plaintiff was deterred by undue hardships of being re-diagnosed for ADHD by the process Clemson required. Mrs. Camp then said that he could receive temporary accommodations for the semester, but after further refusal by Mrs. Merton to record the lecture no actions were taken by Mrs. Camp to check on accommodations statuses. Patrick Cullen Fahey III repeatedly stated that he could not get the same quality of learning from podcasts since they were not the same quality of information, and felt that it was not his responsibility to fix the fact that Mrs. Merton, with permission, told stories that divulged health care information of others. Mrs. Merton stated to the class that if they recorded the lectures that it would violate the privacy rights of those parties. The plaintiff would like to stress the precedence of, Tinker vs. Des Moines Supreme court case in 1969 and SC being a one party consent state, any student paying tuition is allowed to record their teacher. That you need teachers permission to distribute / publish copies is the understanding of the ruling. State courts have used the Supreme court ruling to say that recording professors is allowed in one party record states. The ruling also said that universities do not have total control over their students and that certain rights are granted by the constitution. If you have the freedom to hear the speech, you have the freedom to record the speech.

4. After a general threating letter sent to all students by Mr. Thrift September 14, 2015 the plaintiff reached out in kindness to placate the situation. Patrick Cullen Fahey III felt students judging Thrift's incompetence emotionally hurt Thrift. The plaintiff was trying to be kind.

5. On November 1, 2015 Patrick Cullen Fahey III received an email from Mr. Thrift stating that they would be meeting with Dr. Whitcomb the Director of the accelerated second-degree program on November 3, 2015.

6.     On November 2, 2015 after attending the Nursing Association meeting Mr. Thrift informed the plaintiff they would no longer be meeting with the Director over code of conduct. Mr. Thrift was unable to explain or answer why this was to occur. Patrick Cullen Fahey III felt at this time that the two write-ups were not sufficient enough for dismissal and Mr. Thrift was backpedaling. Mr. Thrift demanded that the plaintiff sign up for his or Mrs. Seaborn's next clinical rotation, and stated it was, "to keep better watch over him." At this point in time the plaintiff had only been written up for language, and being to two minutes late to class. Both incidents were combined into a single written write-up. Both of these violations were sought out by Mrs. Seaborn and documented by Mr. Thrift. Many other students were reprimanded for similar incidents in which they had combined write-ups however dismissal was only sought for Patrick Cullen Fahey III.

7.     On January 08, 2016, Patrick Cullen Fahey III's clinical nurse instructor, Misty Key Seaborn, an adjunct student teacher who was not an eyewitness to the encounter and only learned of the alleged incident from Erika Jackson Carroll at the end of the shift, reported to Clemson that there was a complaint against the plaintiff for interruption and being in one's personal space. Despite Patrick Cullen Fahey III was not addressed to correct supposed behavior, and no documentations were filed or made at the clinical site, nor documents kept in hospital incident reports.

8.     On February 4, 2016 Patrick Cullen Fahey III again requested help through Ms. Campbell with rights to record lecture and provided documentation to her about the legalities of the constitutional rights to record speech.

9.     On February 5, 2016 Mrs. Seaborn went out of her way to protect Jeff Leister when he arrived 4 minutes late to clinical. Tapping her watch and saying her watch had a

4

different time than the students' watches and he was not late, but he still had five seconds to spare.

> On February 12, 2016, Patrick Cullen Fahey III was assigned a patient, but a nurse, seen chatting with Mrs. Seaborn, that was previously cold and distant towards the plaintiff in former rotation then requested to be transferred to his patient. Misty Key Seaborn suggested at this time he switch patients to the patient that the seasoned RN just refused. Unknowingly Patrick Cullen Fahey III accepted and found it extremely hard when the patient was in and out of psychosis.  None of the students had completed a mental health rotation yet. Patrick Cullen Fahey III suffered from triggered PTSD when belittled by both the patient and Misty Key Seaborn during that shift.

10.     On February 17, 2016 Patrick Cullen Fahey III met with both Mrs. Campbell and Dr. Webster and was informed at that time he would be moved from Seaborn's clinical to Campbell's. Patrick Cullen Fahey III was instructed to move past clinical issues and treatment by Seaborn by both Dr. Webster and Mrs. Campbell. Dr. Webster calmed the plaintiff by promising to readdress the false claim of the first write-up and that at the end of the semester Patrick Cullen Fahey III's grade would be adjusted back if without further incident. The Plaintiffs pleas about falsified write-ups and harassing, bullying, and discrimination were therefore ignored. Dr. Webster even suggested Patrick Cullen Fahey III drop out of Clemson and attend Greenville Technical College for an associates degree in nursing. The plaintiff did not feel this was necessary because he had all A's and a B at the time and refused to drop out.

11.     On February 26, 2016 Mrs. Campbell threatened to give Patrick Cullen Fahey III an unsatisfactory for clinical when the plaintiff was nervous about removal of a urine catheter

from a young female. Patrick Cullen Fahey III performed the removal quickly and professionally without any complaints.

12.    On March 2, 2016 Patrick Cullen Fahey III was forced into compiling a list of clinical weaknesses and then preforming those in a remediation with Dr. Zavertnik. Both Mrs. Campbell and Dr. Webster required the plaintiff to preform extra remediations.

After remediation Dr. Zavertnik wrote: I worked with Cullen for 3.5 hours. He did well. He was able to demonstrate: administering meds into an IV PICC line, spiking, priming primary, setting pump, secondary set up, IV piggy back medications set up on pump, hanging/giving blood, give/where to give IM, Sub Q, and intradermal injections. He needed assistance and further instruction for sterile technique related to -Wound dressing change, and Foley Insertion Note: With further practice he was able to demonstrate sterile wound dressing and foley insertion adequately. He was able to verbalize the procedure for: giving full vs. partial bath, change a bed with a patient in it. Cullen was prepared for today, displayed a willingness to learn and was receptive to suggestions for improvement. I recommend he continue reviewing all procedures and utilize the second N3031 class practice time on March 30th.

13.    On March 4, 2016 Patrick Cullen Fahey III told Dr. Webster via email once again that he had been dealing with bullying, harassing, and discrimination not only by nurses at his former clinical site with Mrs. Seaborn, but also that he was bullied, harassed, and discriminated by Mrs. Seaborn. The plaintiff reiterated that he felt it directly related to former bullying, harassing, and discriminating by Mr. Thrift. Further he responded to Dr. Webster about Mrs. Campbell's demands that he must choose either Mr. Thrift or Mrs. Montjoy for his summer rotation. Patrick Cullen Fahey III felt this was much like the former demands by Thrift to take either himself, or Mrs. Seaborn that current semester. All parties knowing why Patrick Cullen

6

Fahey III had PTSD the plaintiff reluctantly accepted the fate of having Mr. Thrift for the summer. Patrick Cullen Fahey III was actually encouraged to take Thrift by some of his classmates who said that he was too incompetent to set him up in situations like those, which he'd already been placed in.

14.    March 8, 2016 Mrs. Campbell gave the plaintiff his first "U" unsatisfactory for clinical documents dated 2/26/16 and told that another "U" would get him another write-up and kicked out of clinical.

15.    On March 9, 2016 Lindsey Montjoy spoke with Patrick Cullen Fahey III and determined with Dr. Webster that he would be required to be under her supervision during the summer rotation at GHS. This was after the option was given to Patrick Cullen Fahey III to have Mr. Thrift or Mrs. Montjoy, and he had chosen to have Mr. Thrift as an instructor because the more time the plaintiff was at GHS location the more PTSD he would have to endure. The plaintiff had wanted to reduce his exposure to places that cause PTSD to as little as possible and actually had chosen another professor and then Mr. Thrift prior to being forced into taking Montjoy at GHS. Both prior choices were located at Patrick B. Harris, a less stressful location.

16.    On March 10, 2016 Mrs. Campbell finally emailed Patrick Cullen Fahey III about CAPS and referral for PTSD, however did not inform that any requests for accommodations would be met. This email was the first time they sent any information to Patrick Cullen Fahey III about CAPS.

17.    On March 11, 2016, after receiving a patient who refused student nurses, Patrick Cullen Fahey III, under guidance of his instructor Lena Burgess Campbell was assigned to work with an Associate's RN Jessica (_____). Patrick Cullen Fahey III conversed with Jessica (_____) and let her know if she had any issues with him talking too much or being in her

personal space to let him know so he may adjust and prevent future complaints. They worked fine together and majority of the day was uneventful until the last patient came onto the floor hadn't received proper pain control. Patrick Cullen Fahey III offered assistance in calling the doctor to expedite the order for pain medication, and both Cullen and the transporter offered to assist in moving patient from stretcher to the patient's bed. Jessica (_____) dismissed both offers of assistance. Seeing the patient face turn red, veins distending in the neck, and crying while moving herself on her elbows from one bed to another the plaintiff sought out his instructor (Mrs. Campbell) and asked for her to come and observe. She instead gave her opinion that it was ok and dismissed the plaintiff. Patrick Cullen Fahey III then returned to the room to witness the patient falling off of the bed. The patient was only partially on the bed and Patrick Cullen Fahey III had to grab her to keep her from falling off as Jessica (_____) was already pulling the transport bed away. The transporter then helped Patrick Cullen Fahey III get the patient properly in the bed. It is studied in nursing school that pain control trumps rehabilitation. It was Patrick Cullen Fahey III's concern that the level of pain and emotional distress could have induced a stress related heart attack. No documentations were filed or made at the clinical site, nor documents kept in hospital incident reports. However again the instructor got with a nurse after clinical to write a complaint against the plaintiff.

18. On March 21, 2016 Patrick Cullen Fahey III was notified by Ms. Campbell, "Please plan to meet with Dr. Wetsel, Dr. Webster and I tomorrow (Tuesday 3/22/16) at 3:00 pm for advisement. Please let me know that you have received this email and will be attending the meeting tomorrow."

19. On March 22, 2016 Patrick Cullen Fahey III was notified that he was dismissed from clinical and that the faculty refused to allow him the right to continue taking tests, which

harmed his final grade opportunity. This did not follow school standards.  Also in Clemson's policy, during a suspension or expulsion, an Administrative Hearing Board will be appointed. Patrick Cullen Fahey III's case being dismissed from clinical and medical surgical class in effect could be deemed the same in affect as a suspension or expulsion, an Administrative Hearing Board was not appointed. He was not afforded the right to move to the traditional program or take the class again to remediate his final grade. Neither Alesia Smith nor Jerry Knighton perused an Administrative Hearing board made up of the Associate Vice President for Student Affairs or his or her designee to serve as Chairperson of the Board, along with two students, one faculty member and one staff member for a proper dismissal case of Patrick Cullen Fahey III.

20.     On March 30, 2016 Dr. Wetsel again denied Patrick Cullen Fahey III the opportunity to continue his education through the Traditional Nursing Program that works at a slower pace.  She wrote, "The Accelerated 2nd Degree Program is the program that is available for students who already hold an earned bachelor's degree.  Admission to the traditional BS Nursing program is as a freshman to Clemson University or change of major/transfer student - first degree. Students who are dismissed from a nursing program are not eligible to be readmitted in nursing."  This does not follow precedence within the Accelerate Nursing Program/Traditional Nursing program where a female student in a prior cohort was allowed to decelerate after failing a course and join the Traditional Nursing Program of Clemson University.

21.     On April 1, 2016 Patrick Cullen Fahey III met with both Alesia Smith with the Office of Community and Ethical Standards and Jerry Knighton with the Title ix department. Mrs. Smith informed Patrick Cullen Fahey III that the professors called Greenville Technical College and claim that the plaintiff was a potential shooter threat. The Plaintiff later contacted

GTC police and confirmed that this did occur speaking with Officer Martin Eldredge of the GTC

police who had arrived on scene to be told that the plaintiff was not even at the school and that

the faculty just felt they should call.  Patrick Cullen Fahey III contacted and spoke with Captain

Rhodes of Clemson Police and found that Clemson's police were not notified of any potential

threat.   Patrick Cullen Fahey III was also informed by Mrs. Smith that the teachers in the

complaint were requesting that Patrick Cullen Fahey III not be allowed to communicate with any

other students or continue any of his other classes without being proctored at another location.

Mrs. Smith told the plaintiff she did not feel that was necessary and that she would not

recommend this and that Patrick Cullen Fahey III could finish his courses with the faculty that

had no complaints about the plaintiff.

       22.     On May 2, 2016 James Hodan, the only other heterosexual white male of the

program, was forced into an academic integrity trial by Dr. Webster. The trial dismissed the

allegations, and the student-court jury ruled in favor of Mr. Hodan after evidence was found

where that the same faculty falsified documents in his case.

       23.     On June 3, 2016, Patrick Cullen Fahey III was notified by Mr. Knighton that the

case being handled by Clemson's Title IX department and would be ruled in favor of the teachers

despite the faculties lack of credibility, known hostility, and evidence that they have a conspired

against the rights of Patrick Cullen Fahey III.

       24.     After an unreasonably delayed investigation process, and the surpassing of

Clemson's 60-day policy for the Title ix investigation to be given to the plaintiff in writing the

plaintiff feels it necessary and forced into filing legal action against the defendants stated herein.

25.    Patrick Cullen Fahey III has sustained tremendous damages to his future education and career prospects as a result of the Actions of the faculty and the Decision of the title IX department.

26.    Throughout the investigative process, Defendants failed to abide by Clemson's own guidelines and regulations and acted in direct violation of federal and/or state law.

27.    A non-exhaustive list of Defendants' wrongful actions include the following: (i) Defendants failed to conduct a thorough and impartial investigation; (ii) Defendants improperly advised and advocated on behalf of nursing staff from clinical rotation; (iii) Defendants evidenced a gender and disability bias against Patrick Cullen Fahey III as the male accused throughout the investigative process; (iv) Defendants made assessments of credibility and evidentiary weight with respect to each party without any logical basis or rationale; (v) Defendants denied Patrick Cullen Fahey III of the opportunity to present and question all relevant witnesses; (vi) Defendants failed to afford Patrick Cullen Fahey III the requisite presumption of innocence required by a preponderance of the evidence standard; and (vii) the unwarranted dismissal was arbitrarily followed by defamation and slander, all of which demonstrated substantial procedural errors in violation of Title IX, the Fourteenth Amendment and other federal and/or state laws.

28.    When Defendants subjected Patrick Cullen Fahey III to disciplinary action, they did so in an arbitrary and capricious way, and in discrimination against him on the basis of his male sex and disabilities. Defendants failed to adhere to Clemson's own guidelines and regulations, and the guidelines and regulations themselves are inherently discriminatory and insufficient to protect the rights of male students. The Decision reached was discriminatory; given the evidence (or lack thereof), a discriminatory bias against males and the underlying

11

motive to protect Clemson's reputation and financial wellbeing was required for a conclusion of misconduct to be reached.

29.     Patrick Cullen Fahey III has been greatly damaged by the actions of Defendants: his education and career prospects have been severely compromised as he will be unable to gain admission to a graduate school or obtain employment in healthcare with a disciplinary mark on his academic record. Additionally, as a result of Defendants' actions and inactions, Patrick Cullen Fahey III has suffered physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

30.     Patrick Cullen Fahey III therefore brings this action to obtain relief based on causes of action for, among other things, violation of Title IX of the Education Amendments of 1972, violation of the 14th Amendment Procedural Due Process, breach of contract and other state law causes of action.

## THE PARTIES

31.     Plaintiff is a natural person, citizen of the United States and resident of the State of South Carolina. During the events described herein, Plaintiff was a student at Clemson University and resides in Greenville, South Carolina.

32.     Upon information and belief, Clemson University is a public science and engineering-oriented research university located in Clemson, South Carolina.

33.     Upon information and belief, the Clemson University Board of Trustees is the governing body of Clemson University. It is composed of 13 members, including six elected by the state legislature and seven successor members. Upon information and belief, it is responsible for setting policy and approving budgets and expenditures.

34.     Upon information and belief, Dr. James P. Clements is a resident of the State of South Carolina and was the President of Clemson University at all relevant times herein.

35.     Upon information and belief, Jason Richard Thrift is a resident of the State of South Carolina and was the Full Time Nursing Faculty of the Accelerated Second Degree Program at Clemson University at all relevant times herein.

Upon information and belief, Misty Key Seaborn is a resident of the State of South Carolina and was an adjunct employee representing Nursing Faculty of the Accelerated Second Degree Program at Clemson University at all relevant times herein.

Upon information and belief, Lena Burgess Campbell is a resident of the State of South Carolina and was a Full-Time lead instructor of the Nursing Faculty Accelerated Second Degree Program at Clemson University at all relevant times herein.

Upon information and belief, Sheri Smith Webster is a resident of the State of South Carolina and was the Assistant Professor / Coordinator, Accelerated Second Degree Program at Clemson University at all relevant times herein.

Upon information and belief, Margaret Ann Wetsel is a resident of the State of South Carolina and was the Associate Professor / Interim Director School of Nursing at Clemson University at all relevant times herein.

Upon information and belief, Lindsey Montjoy is a resident of the State of South Carolina and was an Full-Time Nursing Faculty of the Accelerated Second Degree Program at Clemson University at all relevant times herein.

Upon information and belief, Catherine Sikkema Murton is a resident of the State of South Carolina and was an Full-Time Nursing Faculty of the Accelerated Second Degree Program at Clemson University at all relevant times herein.

Upon information and belief, Margaret Camp is a resident of the State of South Carolina and was director of Student Disability Services at Clemson University at all relevant times herein.

Upon information and belief, Jerry Knighton is a resident of the State of South Carolina and was Director of the Office of Access and Equity and is the University's designated Affirmative Action/Equal Employment Opportunity Officer and Title IX Coordinator at Clemson University at all relevant times herein.

Upon information and belief, Alesia Smith is a resident of the State of South Carolina and was Associate Dean of Students Director/ Deputy Title IX Coordinator at Clemson University at all relevant times herein.

36.    Patrick Cullen Fahey III and Defendants Clemson University, Clemson University Board of Trustees, Clements, Thrift, Seaborn, Campbell, Webster, Wetsel, Murton, Montjoy, Camp, Knighton, and Smith are sometimes hereinafter collectively referred to as the "Parties."

## JURISDICTION AND VENUE

37.    This Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under the constitution and statutes of the United States; and (ii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

38.    This Court has personal jurisdiction over Defendant Clemson on the grounds that it is conducting business within the State of South Carolina.

14

39.    This Court has personal jurisdiction over Defendant Board of Trustees on the grounds that it is conducting business within the State of South Carolina and is the governing body of Clemson University.

40.    This Court has personal jurisdiction over Defendant Clements on the grounds that he was acting as an agent of Clemson at all relevant times herein.

41.    This Court has personal jurisdiction over Defendant Thrift on the grounds that she was acting as an agent of Clemson at all relevant times herein.

42.    This Court has personal jurisdiction over Defendant Seaborn on the grounds that she was acting as an agent of Clemson at all relevant times herein.

43.    This Court has personal jurisdiction over Defendant Campbell on the grounds that she was acting as an agent of Clemson at all relevant times herein.

44.    This Court has personal jurisdiction over Defendant Webster on the grounds that she was acting as an agent of Clemson at all relevant times herein.

45.    This Court has personal jurisdiction over Defendant Wetsel on the grounds that he was acting as an agent of Clemson at all relevant times herein.

46.    This Court has personal jurisdiction over Defendant Montjoy on the grounds that he was acting as an agent of Clemson at all relevant times herein.

47.    This Court has personal jurisdiction over Defendant Murton on the grounds that he was acting as an agent of Clemson at all relevant times herein.

48.    This Court has personal jurisdiction over Defendant Camp on the grounds that he was acting as an agent of Clemson at all relevant times herein.

49.    This Court has personal jurisdiction over Defendant Knighton on the grounds that he was acting as an agent of Clemson at all relevant times herein.

50.    This Court has personal jurisdiction over Defendant Smith on the grounds that he was acting as an agent of Clemson at all relevant times herein.

51.    Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because Clemson is considered to reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**I.    Agreements, Representations, Covenants & Warranties Between Plaintiff and Clemson**

52.    Plaintiff attended Clemson University and Greenville Technical College in South Carolina where he achieved a cumulative 3.0 GPA. He worked for Greenville Technical College before returning to attend Clemson for a second time in the Accelerate Nursing Program. Patrick Cullen Fahey III is a former graduate of Marketing from Clemson class of 2008.

53.    Upon his acceptance, Clemson provided Patrick Cullen Fahey III with copies of its school policies, including Clemson's Anti-Harassment and Non-Discrimination Policy ("Non-Discrimination Policy") and the Clemson University Student Code of Conduct ("Code of Conduct")(collectively, the "Policies"), current copies of which are available on Clemson's internet website.

54.    With respect to cases involving allegations of sexual discrimination, sexual harassment, and sexual assault, Clemson's Non-Discrimination Policy provides as follows:

> This document defines Clemson University's policy regarding harassment/discrimination. Clemson University is committed to an educational and work environment in which all individuals are treated with respect and dignity, free from harassment and/or discrimination. Accordingly, it is the policy of Clemson University that harassment/discrimination as defined in this policy, by employees, students or nonemployees will not be tolerated. It is also the policy of Clemson University that retaliation against any person who has filed a complaint of harassment/discrimination or who has assisted or participated in any manner in

16

the investigation and resolution of a complaint of harassment/discrimination is prohibited and subject to disciplinary action.

Clemson University will respond promptly to all complaints of harassment, discrimination, and retaliation. Immediate and appropriate corrective action will be taken when it is determined that harassment has occurred.

....

The policy is intended to meet Clemson University's responsibilities under Titles VI and VII of the Civil Rights Act 1964, the Pregnancy Discrimination Act of 1978, Title IX of the Education Amendments of 1972, Sections 503 and 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Age Discrimination in Employments Act of 1967, the Age Discrimination Act of 1975, the Vietnam Veterans Readjustment Assistance Act of 1974, the Genetic Information Nondiscrimination Act of 2008, the Violence Against Women Act, and applicable provisions of the South Carolina Human Affairs Law.

55.    The Office of Community and Ethical Standards is responsible for resolving student conduct issues. The Code of Conduct provides the process by which students who have been accused of violating one or more of the enumerated ethical misconduct policies are investigated, heard and disciplined.

56.    Clemson's Code of Conduct provides that anyone may initiate a complaint against a student for misconduct. The complaint shall be submitted in writing and directed to the OCES. The Director of OCES is responsible for coordination of disciplinary proceedings. The Director has authority to determine appropriateness of a complaint, accept a student's admission to a violation, impose sanctions, and hear cases involving alleged violations of student regulations.

57.    In cases where the contemplated sanction may include eviction from University Housing, suspension or expulsion, an Administrative Hearing Board will be appointed. The Associate Vice President for Student Affairs or his or her designee will serve as Chairperson of the Board, along with two students, one faculty member and one staff member.

58.    The rights afforded to a complainant and respondent under Clemson's Code of Conduct are inexplicably disparate. In fact, the only right afforded to both parties is the right to choose an advisor to accompany the party to a hearing. The respondent is afforded the following rights:

- the right to remain silent;

- pending action on alleged violations will not alter the status of a student, nor shall the right to be present on campus to attend classes be suspended, except when an interim suspension has been imposed;

- the University may process a student's case separately from any action taken by the criminal justice system;

- prior cases of discipline will not be used against a student in determining whether the action is a violation of a student regulation; however, prior discipline can be used in determining a sanction;

- a university official shall inform students in writing of the reasons for any proposed disciplinary action in sufficient time to ensure that student has opportunity to prepare for a hearing;

- the student is responsible for contacting witnesses on his own behalf.

59.    Contrarily, the complainant is afforded the following rights which ensure greater protection of the student's fundamental rights:

- the right to be informed of the discipline process prior to any disciplinary action;

- the right to attend the hearing and the option to provide testimony regarding the incident;

- to be informed in writing of the outcome of the disciplinary hearing;

- to be informed of any appeals filed by respondent;

- the right to appeal the finding of the disciplinary panel.

60.     Evidently, while the rights afforded to a complainant ensure the basic procedural rights of notice and an opportunity to be heard, the same such rights are not guaranteed to a respondent under Clemson's Code of Conduct.

61.     Upon receipt of an incident report or written complaint, the Director of OCES will review the report and contact the respondent by letter, phone, or email to schedule an appointment for a discipline conference.

62.     During this conference, the alleged violations and disciplinary process will be discussed. Respondent will then be given an opportunity to review the information describing the alleged violation and respond to such allegations.

63.     If the facts and/or sanctions concerning the alleged violation cannot be agreed upon by OCES and the respondent, OCES will offer the following options to the respondent: (1) he may plead no contest, accept sanctions imposed and waive his opportunity for an administrative hearing; or (2) he may request a hearing before the administrative hearing board.

64.     When an administrative hearing is requested, or the contemplated sanction is eviction from University housing, suspension or dismissal, the Director or Associate Director of OCES will notify the respondent of the hearing in writing a minimum of five business days prior to the date of the hearing. Such notice shall include the following information: (i) a statement of the specific regulations allegedly violated; (ii) a description of the incident; (iii) the names of possible witnesses; (iv) a copy of any documents in possession of OCES that will be presented to the Administrative Hearing Board; (v) the possible sanctions to be imposed; and (vi) the time, date and location of the hearing.

65.    The hearing shall be recorded and kept in the OCES office for 6 months; the respondent may request a transcript of the recording, however it will be produced at his own expense.

66.    Demonstrating a process that is not impartial in either appearance or practice, on behalf of the University or at the request of the complainant, the facts, circumstances and evidence will be presented by the Director of OCES to the administrative hearing board.

67.    Further, OCES staff will contact and request the presence of witnesses deemed necessary to appear, on behalf of the University or complainant. Any witnesses contacted by OCES are required to appear.

68.    Contrarily, respondents are charged with the task of contacting and requesting the appearance of their own witnesses, despite the lack of any authority to compel the appearance of one who refuses to appear voluntarily.

69.    Both parties must be permitted the opportunity to present and examine statements, facts and any relevant information, present and question their own witnesses and present questions for other witnesses to the Chairperson, in order to refute or respond to testimony.

70.    After all information has been presented, the administrative hearing board will go into closed deliberations to determine whether the student has violated each section of the Code of Conduct which the student is charged with violating. The decision will be made based on a preponderance of the evidence standard.

71.    The Chairperson is responsible for rendering a decision in writing to the respondent. The decision shall include a summary of the findings and the sanctions imposed. The complainant will also be notified of the outcome in cases where the complainant is a "victim of violence."

20

72.     In cases where the sanction involves suspension or dismissal, the decision of the administrative hearing board may be appealed to the Vice President of Student Affairs within five business days. In cases involving sexual misconduct, either party may file an appeal, thus subjecting the respondent to a form of double jeopardy. Appeals must be based on at least one of the following four grounds: (i) a procedural error so substantial that the student did not receive a fair hearing; (ii) significant information or evidence has become available that was not available previously; (iii) the sanction was arbitrary or grossly disproportionate to the offense; or (iv) the decision was completely unsupported by the evidence.

73.     In decisions resulting in suspension or dismissal, based on an allegation of sexual misconduct, both parties may thereafter appeal the decision of the Vice President of Student Affairs to the President of the University, within five business days. Such appeals must be based on one of the four above-mentioned criteria. Thus, a complainant is permitted *three* opportunities to pursue a finding of responsibility against a respondent.

74.     Notably, Clemson's Policies do not indicate a timeline for completion of an OCES investigation, in violation of Title IX's requirement that investigations be completed within sixty (60) days.

75.     Curiously, in an attempt to validate any anticipated procedural missteps, the Code of Conduct notes that "deviation from prescribed procedures will not necessarily invalidate a decision or proceeding unless significant prejudice to the referred student is shown to have resulted."

76.     Patrick Cullen Fahey III has yet to receive any due process in the allegations brought against him. He has also not been informed of how each violation claimed has been

21

supported or upheld by Clemson's Code of Conduct. The Code of Conduct has been vaguely interpreted to represent the parties discriminating against the plaintiff.

77.    Among the witnesses identified by Patrick Cullen Fahey III was Nani Aspenwall, and Nora Cialkowski both witnesses critical to the collaboration of staff against and the exculpation of Patrick Cullen Fahey III. Patrick Cullen Fahey III was left to contact Nani Aspenwall, and Nora Cialkowski on his own and request her voluntary statement. However, both witnesses refused to make a statement while still enrolled in the program; thus Patrick Cullen Fahey III was left with no means by which to compel crucial testimonies for his defense.

78.    Thereafter, Dr. Steck came forward to Patrick Cullen Fahey III and stated that even she has received bullying and harassment through emails from the individuals involved with harassing and bullying Patrick Cullen Fahey III.

79.    On April 1, 2016, Patrick Cullen Fahey III received an email from OCES, requesting that he attend a meeting with Defendant Knighton and Defendant Smith the same day, April 1, to discuss an incident recently reported to their office.

## II.    Failure to Conduct a Thorough and Impartial Investigation

80.    Clemson's Policies provide: "Clemson University is committed to an educational and work environment in which all individuals are treated with respect and dignity, free from harassment and/or discrimination." Further, "Clemson University will respond promptly to all complaints of harassment, discrimination, and retaliation."

81.    Notwithstanding, Defendants performed a one sided and biased investigation in favor of faculty's allegations of misconduct.

82.    The lack of experience or training on the part of either Defendant Smith or Defendant Knighton resulted in a procedurally flawed and superficial investigation process.

22

Under the direction of Defendant Knighton, and in response to both internal institutional pressure and external pressure from the United States Department of Education, the Investigators pursued an investigation calculated to lead to the foregone conclusion that Patrick Cullen Fahey III was guilty of the misconduct alleged.

### III.    Failure to Avoid Conflicts of Interest

83.    The U.S. Department of Education's 2011 Dear Colleague Letter outlines the responsibilities of the Title IX Coordinator.

84.    Specifically, the Dear Colleague Letter advises that the Title IX coordinator should not have other job responsibilities that may create a conflict of interest.

85.    The coordinator's responsibilities include overseeing all Title IX complaints and identifying and addressing any patterns or systemic problems that arise during the review of such complaints and reviewing the recipient's disciplinary procedures to ensure that the procedures comply with the prompt and equitable requirements of Title IX.

86.    Notwithstanding, Clemson's Code of Conduct provides that the Director of Community and Ethical Standards and his/her designee may present the facts, circumstances and evidence on behalf of the University or on behalf of the complainant to the hearing board, creating a clear conflict of interest when the University is essentially permitted to act as complainant.

87.    Moreover, the Code of Conduct requires a student suspended as a result of a disciplinary hearing to petition for admission through the director of Community and Ethical Standards or his/her designee. This is a certain conflict of interest when the very person who upheld the decision to dismiss an accused student is also the individual who determines whether he should be readmitted to the University. Fair process would require the petition for re-

23

admission be considered by a neutral party unfamiliar with the underlying disciplinary investigation.

88.     Significantly, the Director of the Office of Access & Equity at Clemson is also the University's Title IX Coordinator, Jerry Knighton. Similarly, the Director of the Office of Community and Ethical Standards is also Deputy Title IX Coordinator, Alesia Smith. The combination of these roles, rather than appointment of an independent third party to act as Title IX Coordinator, presented substantial conflicts of interest. Certainly, Defendant Smith had a predisposition towards finding accused students responsible for misconduct given the significant pressure imposed on schools to handle ethical misconduct complaints aggressively.

89.     Defendant Webster personal bias against Patrick Cullen Fahey III as the male student accused of misconduct was evident throughout the investigation and adjudication process. She acted as witness, prosecutor and judge against Patrick Cullen Fahey III and did not involve proper school channels.

90.     Notably, Defendant Smith is currently under scrutiny for her involvement in the investigation of a recent incident at Clemson in which an African-American banner on campus was defaced on April 11, 2016.

91.     Upon information and belief, Defendant Smith was recused from any OCES proceedings related to the investigation of the "#Clemson5", a group of Clemson students who were arrested following their refusal to leave a sit-in which arose in response to the seemingly racially motivated incident.

92.     In an attempt to identify the responsible individuals, students submitted multiple Freedom of Information Act requests to various Clemson administrators, including Defendant Smith.

24

93.    Upon information and belief, Defendant Smith's son was one of the students arrested, as part of the #Clemson5.

94.    Upon information and belief, Defendant Smith attempted to prevent the investigation of these students for violations of Clemson's Code of Conduct, declining to identify one of the arrested students as her son.

95.    Evidently, Defendant Smith intentionally overlooked her own son's potential violations of the Code of Conduct.

96.    Upon information and belief, Defendant Smith was ultimately recused from such investigation by the OCES.

97.    The foregoing demonstrates the ongoing unprofessional behavior exhibited by Defendant Smith in her role as Clemson's Title IX Coordinator.

**IV.    Gender Bias Against Plaintiff as the Male Accused**

98.    Pursuant to the U.S. Department of Education Office for Civil Rights' Guidelines, Clemson was required to conduct an impartial and unbiased investigation process.

99.    Upon information and belief, there are no reported incidents of male complainants against female students for sexual assault and/or there are no reports of female accused students being disciplined for sexual misconduct by male complainants at Clemson.

100.    Upon information and belief, Defendants are knowledgeable of the fact that complaints of misconduct are disproportionately lodged by females against males.

101.    Upon information and belief, Defendants have recognized the increased pressure, both internally, and from the United States government to aggressively discipline male students accused of misconduct towards females, under threat of rescission of federal funds.

102.    Defendants' response to this pressure is evident from a review of Clemson University's recent Annual Fire Safety & Security Reports (the "Clery Reports"). Indeed, Clemson's Clery Reports reveal that the number of forcible sex offenses reported on Clemson's campus has increased considerably, from only 2 reported instances in 2012 to 12 reports in 2014.

103.    Furthermore, Clemson University has recognized the disparate number of complaints filed by female students versus male students; during the 2013-2014 academic year, the number of male students investigated for misconduct was 1292 while the number of female students investigated for misconduct was 527. Similarly, the number of male students investigated during the 2014-2015 school year was 1301 while the number of female students was 534.

104.    Defendant Seaborn demonstrated a race bias against Patrick Cullen Fahey III as the heterosexual white male student accused of misconduct when she found Jeff Leister undeserving of a write-up when late to clinical. Mrs. Seaborn demonstrated sexual bias against Patrick Cullen Fahey III when allegations of interruption and standing in the personal space of a nurse, which was obviously distressed about, lack of efficiency of coworkers and despite her dismissal from the hospital a short time after. Mrs. Seaborn demonstrated disability bias against Patrick Cullen Fahey III when inducing PTSD and then harassing him about the incident.

105.    Clemson's Policies are inherently discriminatory against respondents, who are invariably male.

106.    Clemson's guidelines and regulations are set up to disproportionately affect the male student population as a result of the higher incidence of female complainants of misconduct against male complainants of misconduct.

107.    For instance, the rights afforded to a complainant and respondent under

Clemson's Code of Conduct are inexplicably disparate. In fact, the only right afforded to both

parties is the right to choose an advisor to accompany the party to a hearing. The respondent is

afforded the following rights:

- the right to remain silent;

- pending action on alleged violations will not alter the status of a student, nor shall the right to be present on campus to attend classes be suspended, except when an interim suspension has been imposed;

- the University may process a student's case separately from any action taken by the criminal justice system;

- prior cases of discipline will not be used against a student in determining whether the action is a violation of a student regulation; however, prior discipline can be used in determining a sanction;

- a university official shall inform students in writing of the reasons for any proposed disciplinary action in sufficient time to ensure that student has opportunity to prepare for a hearing;

- the student is responsible for contacting witnesses on his own behalf .

108.    Contrarily, the complainant is afforded the following rights which ensure greater

protection of fundamental rights:

- the right to be informed of the discipline process prior to any disciplinary action;

- the right to attend the hearing and the option to provide testimony regarding the incident;

- to be informed in writing of the outcome of the disciplinary hearing;

- to be informed of any appeals filed by respondent;

- the right to appeal the finding of the disciplinary panel.

27

109.    Evidently, while the rights afforded to a complainant ensure the fundamental rights of notice and an opportunity to be heard, the same such rights are not guaranteed to a respondent under Clemson's Code of Conduct.

110.    Additionally, Clemson's Code of Conduct permits a complainant *three* opportunities to pursue a finding of responsibility against respondent, by allowing two levels of appeal. In essence, Clemson's Policies permit a form of triple jeopardy, affording the University three chances to find an accused student responsible for the charges, and requiring a respondent to defend himself on three different occasions.

111.    Furthermore, Clemson's Code of Conduct provides that the director of Community and Ethical Standards and his/her designee may present the facts, circumstances and evidence on behalf of the University *or on behalf of the complainant* to the hearing board. Permitting the University to take on the role, or act on behalf of, the complainant creates a clear conflict of interest as the University is highly unlikely to reach a decision unfavorable to itself.

112.    Based on the foregoing, Defendants evidenced a clear gender bias against Plaintiff as the male accused by the defendants without proper investigation and/or hearing process, in violation of Title IX and his rights to fair process.

### V.    Failure to utilize the requisite preponderance of the evidence standard.

113.    The U.S. Department of Education Office for Civil Rights and Clemson's Policies require that a preponderance of the evidence standard be used to evaluate allegations of misconduct. The Code of Conduct defines preponderance of the evidence as: "whether it is more likely than not that the referred student violated the Student Code of Conduct."

114.    The preponderance of the evidence standard does not equate to judging the accused as guilty until proven innocent. In fact, nowhere in the Department of Education's

guidelines or Clemson's policies is such a standard referenced. However, Clemson's investigation process demonstrated a clear gender bias, which resulted in a Decision that did not afford Plaintiff the requisite presumption of innocence.

115.    Specifically, Defendants improperly placed the burden of proof on Patrick Cullen Fahey III to establish innocence.

116.    Throughout the process, Defendants discriminated against Patrick Cullen Fahey III as the male accused of misconduct.

117.    Evidently, the investigators intentionally overlooked any evidence tending to diminish faculty's credibility and/or exculpate Patrick Cullen Fahey III.

118.    Accordingly, Defendants failed to utilize the requisite preponderance of the evidence standard when they found third-party witnesses to be more credible than Patrick Cullen Fahey III despite the lack of any corroborating evidence, wholly discounted all exculpatory evidence, and presumed Patrick Cullen Fahey III guilty from the outset. Defendants conducted an investigation designed to reach a predetermined result.

### AS AND FOR A FIRST CAUSE OF ACTION
### Violation of Title IX of the Education Amendments of 1972

119.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

120.    Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

121.    Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

122.    Upon information and belief, Defendant Clemson receives federal funding for research and development.

123.    Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the *prompt and equitable resolution* of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (*emphasis added*). Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.[1]

124.    The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also *"[accord] due process to both parties involved..."*[2]

125.    The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

- "Notice . . . of the procedure, including where complaints may be filed";

- "Application of the procedure to complaints alleging [sexual] harassment...";

_____

[1] *See generally* U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX* (2001) at 19-20, 21 & nn.98-101.
[2] *Id.* at 22 (emphasis added).

- "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

- "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

- "Notice to the parties of the outcome of the complaint......"[3]

126.    A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes "alleged sexual assaults." [4]

127.    Based on the foregoing, Defendant Clemson deprived Plaintiff, on the basis of his sex, race, and/or disability of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Defendant Clemson's guidelines and regulations.

128.    Based on the foregoing, Defendant Clemson failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of the Incident and subsequent adjudication in a manner that was biased against Plaintiff.

129.    Clemson has created an environment where an accused white male student is fundamentally denied due process by being prosecuted through the conduct process under a presumption of guilt. Such a one-sided process deprived Patrick Cullen Fahey III, as a male student, of educational opportunities at Clemson on the basis of his ethnicity and sex.

130.    Defendant Clemson had no intention of following its own policies and procedures for Patrick Cullen Fahey III as the male accused of code of conduct misconducts when it

---

[3] *Id.* at 20.

[4] *Id.* at 21.

erroneously found Patrick Cullen Fahey III responsible for violations despite the absence of any reliable or credible evidence.

131.    Clemson applied its stated policies and procedures and gender-biased practices in a manner that discriminated against Plaintiff on the basis of his sex, color, ethnicity, and disability and led to an erroneous and adverse outcome. Specifically:

- Defendants found Erika Jackson Carroll to be more credible despite her lack of notifying the plaintiff to take corrective actions, her behavior in clinical, and her dismissal from the hospital.

- Defendants enforced their inherently discriminatory policies against Patrick Cullen Fahey III, for instance, by allowing the faculty to collaborate and work together as judge, jury, and prosecutor without due process or any allowed any rights granted to the plaintiff through school policies and dismissal guidelines.

- Defendants violated Patrick Cullen Fahey III right against self-incrimination when they coerced him into signing statements of false allegations.

- Defendants lured Patrick Cullen Fahey III into a false sense of security when they falsely assured him it would be in his best interests to let things settle and corrective action would be taken at the end of the semester.

- Defendants failed to afford Patrick Cullen Fahey III a presumption of innocence when they overlooked all potentially exculpatory evidence and presumed Patrick Cullen Fahey III guilty from the outset.

- Defendants failed to adequately consider and investigate Patrick Cullen Fahey III complaint against faculty, in which he submitted that he was further harassed and the faculty has a retaliatory behavior.

- Defendants failed to require crucial witnesses concerning faculty's credibility and behaviors.

132.    Upon information and belief, Clemson has demonstrated a pattern of inherent and systematic gender bias and discrimination against male students accused of misconduct.

133.    Upon information and belief, Clemson's mishandling of Plaintiff's investigation was informed by internal institutional pressure as well as external pressure from the United States Department of Education, under a threat of rescission of federal funds.

134.    As outlined above, the outcome was predetermined and simply a motion into a biased, prejudiced and implicitly unfair process, calculated to reach the conclusion that Plaintiff was responsible for the misconduct alleged.

135.    Based on the foregoing, Defendant Clemson imposed an unwarranted and excessive sanction on Plaintiff as a result of an erroneous outcome reached by a flawed investigation.

136.    Based on the foregoing, male respondents accused of misconduct at Clemson are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof.

137.    Based on the foregoing, Plaintiff was subjected to a biased, prejudiced and explicitly unfair process in violation of Title IX.

138.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

139.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, any necessary attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION
### Violation of the Fourteenth Amendment of the United States Constitution
### Procedural Due Process

140.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

141.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

142.    A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process.

143.    A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

144.    Plaintiff's constitutionally protected property interest in his continued enrollment at Clemson and to be free from arbitrary dismissal arises from the policies, courses of conduct, practices and understandings established by Clemson.

145.    Plaintiff's constitutionally protected property interest further arises from the express and implied contractual relationship between Clemson and Plaintiff.

146.    It is well established that Fourteenth Amendment due process protections are required in the higher education disciplinary proceedings.

147.    Thus, a person who has been admitted to a university, and who has paid tuition to that university, has a protected property interest in continuing his education at that university until he has completed his course of study. The state cannot deprive a person of this interest without due process.

148.    As a result, if Plaintiff as a Clemson student faced disciplinary action that included the possibility of suspension or dismissal if found responsible for alleged misconduct,

34

then the Due Process provisions of the Fourteenth Amendment to the United States Constitution applied to the disciplinary process Clemson used.

149.    Clemson, as a public university, has an absolute duty to provide its students equal protection and due process of law by and through any and all policies and procedures set forth by the University.

150.    Under both federal and state law, Plaintiff had a constitutionally protected property interest in continuing his education at Clemson.

151.    Plaintiff was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing. The allegations in this case resulted in a sanction that will have lifelong ramifications for Plaintiff, and are quasi-criminal in nature.

152.    Plaintiff was entitled to fundamentally fair procedures to determine whether he was responsible for the alleged misconducts.

153.    In the course of such investigation and adjudication, Clemson flagrantly violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment through its repeated acts of gender bias and of deprivation of the minimal requirements of procedural fairness.

154.    Upon information and belief, Clemson was pressured by the Department of Education into complying with the Title IX investigative and adjudicatory process mandated by the 2011 Dear Colleague Letter and by subsequent federal actions, statements, and directives.

155.    Defendants deprived Plaintiff of his liberty and property interests without affording him basic due process, including, but not limited to, his right to a fair adjudication, his right to be informed of the exact charges against him, his right to be heard by an impartial

35

factfinder, to question his accuser, challenge the credibility of other adverse witnesses and present evidence and witnesses in support of his defense. Rather than investigate what occurred, Defendants conducted a superficial investigation biased against Plaintiff as a male accused of misconduct.

156.    As a result, Defendants failed to provide Plaintiff with the basic due process protections that they are required to provide students accused of misconduct.

157.    Defendants, as well as other agents, representatives, and employees of Clemson were acting under color of state law when they showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

158.    Defendants all agreed to, approved, and ratified this unconstitutional conduct.

159.    As a result of these due process violations, Plaintiff continues to suffer ongoing harm, including damages to his reputation and other non-economic and economic damages.

160.    Accordingly, Defendants are liable to Plaintiff for violations of the Due Process Clause of the Fourteenth Amendment, and for all damages arising therefrom.

161.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

162.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR A THIRD CAUSE OF ACTION
### Breach of Contract

163.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

36

164.    Based on the foregoing, Clemson created express and implied contracts when Plaintiff accepted an offer of admission to Clemson and paid the tuition and fees.

165.    Based on the aforementioned facts and circumstances, Defendant Clemson breached express and/or implied agreement(s) with Plaintiff.

166.    Defendant Clemson committed several breaches of its agreements with Plaintiff during the investigation and hearing process. A non-exhaustive list of Clemson's breaches include the following:

### Denial of the right to present relevant information.

167.    Clemson's Policies provide that "the referred student and complainant shall have the opportunity to present and examine statements, facts and any relevant information regarding the case."

168.    Nonetheless, John Doe was deprived of the opportunity to present information relevant to the case when Defendants failed to call Witnesses.

169.    While witnesses contacted by OCES are obligated to appear for a hearing, a respondent is left without any authority to compel the appearance of a witness he deems necessary, should they fail to comply.

170.    As such, Nani Aspenwall, Nora Cialkowski, and/or Dr. Steck were not identified by the Investigators as a witnesses for the University to present, Patrick Cullen Fahey III was required to procure their appearance on his own.

171.    However, as witnesses refused to appear or give testimony Patrick Cullen Fahey III was left without recourse to compel witnesses to testify; while OCES could have required others to testify, it intentionally picks and chooses who to involve, aware that their testimony would likely be exculpatory as to Patrick Cullen Fahey III.

37

172.    The defendant Smith and Knighton's lack of documents in writing including closed door meetings and copies of the title ix investigation.

173.    Therefore, Defendants violated their obligation to afford Patrick Cullen Fahey III the opportunity to present and examine all statements, facts and relevant information regarding the case.

### Failure to keep disciplinary records confidential.

174.    Clemson's Policies provide that "All student disciplinary records are kept confidential to the extent allowed by applicable state and federal laws. Generally, student conduct records requested by external institutions, agencies or individuals are available only upon the signed consent of the student…"

175.    Notwithstanding, Defendants were allowed to make false allegations of Patrick Cullen Fahey III to other colleges and institutions.

176.    Specifically, On March 22, 2016 a female faculty member called Greenville Technical College Police and reported a potential shooter threat in a reference to Patrick Cullen Fahey III, and when police arrived on scene they found that the student wasn't even on campus. The faculty stated they just wanted to call and make GTC aware.

177.    Thus, Defendants breached their contract with Patrick Cullen Fahey III when they failed to maintain the confidentiality and privacy of his disciplinary record and made further false accusations.

### Failure to ensure procedural questions resolved by Chairperson.

178.    Clemson's Policies provide that during an administrative hearing, "All procedural questions are subject to the final decision of the chairperson."

179.    Yet, given the Defendants Webster, Campbell, and Wetsel evident lack of training and unfamiliarity with the proper protocol, they acted as if they were the judge of the proceedings, to make a final ruling without involving Clemson's OCES or Clemson University until after damages were accrued.

180.    While Clemson's Code of Conduct requires that all procedural questions are subject to the final decision of the chairperson at a hearing, Defendant Wetsel guided a dismissal proceeding by clarifying Defendant Webster's instructions, omitting an explanation of the burden of proof and misrepresenting the parties' ability to appeal.

181.    Plaintiff is entitled to recover damages for Defendant Clemson's breach of the express and/or implied contractual obligations described above.

182.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

183.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing

184.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

185.    Based on the aforementioned facts and circumstances, Defendant Clemson acted in bad faith when it meted out an erroneous Decision and disproportionate Sanction notwithstanding the flawed investigative process and lack of evidence in support of faculty and/or clinical nurses allegations of misconducts.

186.    Based on the aforementioned facts and circumstances, Defendant Clemson breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff.

187.    As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

188.    Plaintiff is entitled to recover damages for Defendant Clemson's breach of the express and/or implied contractual obligations described above.

189.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

190.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Negligence

191.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

192.    Defendants owed a duty of care to Plaintiff, arising from the obligations delineated in Clemson's Policies, and directives issued by the U.S. Department of Education's Office for Civil Rights. Such duties included, without limitation, a duty of reasonable care to allow Plaintiff an equal opportunity to present information and witnesses in support of his defense; a duty of care to conduct an impartial and thorough investigation of the allegations of misconduct against him; and a duty of care to utilize the preponderance of the evidence standard in reaching a determination.

40

193.    Based on the foregoing, Defendants breached their duties owed to Plaintiff.

194.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

195.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Promissory Estoppel

196.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

197.    Clemson's Policies constitute unambiguous representations and promises that Clemson should have reasonably expected to induce action or forbearance on the part of Plaintiff.

198.    Clemson expected or should have expected Plaintiff to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that Clemson would not tolerate, and Plaintiff would not suffer, discrimination or harassment by fellow students or faculty members and would not deny Plaintiff his procedural rights should he be accused of a violation of Clemson's policies.

199.    Plaintiff reasonably and foreseeably relied to his detriment on these express and implied promises and representations made by Clemson, by choosing to attend Clemson rather than other schools of equal caliber and paying the required tuition and fees.

200.    These express and implied promises and representations made by Clemson must be enforced to prevent substantial injustice to Plaintiff.

201.    Based on the foregoing, Clemson is liable to Plaintiff based on Promissory Estoppel.

202.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

203.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Declaratory Judgment

204.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

205.    Clemson has committed numerous violations of the Parties' contracts and of federal and state law.

206.    Plaintiff's future educational and career prospects have been severely damaged. Without appropriate redress, the unfair outcome will continue to cause irreversible damages to Plaintiff's future educational and employment prospects, with no end in sight.

207.    As a result of the foregoing, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Plaintiff's formal student record at Clemson.

208.    By reason of the foregoing, Plaintiff requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the outcome and findings made by Clemson be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's suspension from Clemson be removed from his education file; (v) any record of the complaint against Plaintiff be permanently destroyed; (vi) Plaintiff be readmitted to Clemson for

42

the Fall 2016 semester; and (vii) Clemson's rules, regulations and guidelines are unconstitutional as applied.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff Patrick Cullen Fahey III demands judgment against Defendants as follows:

(i)     On the first cause of action for violation of Title IX of the Education Amendments of 1972, a judgment awarding Patrick Cullen Fahey III damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)     On the second cause of action for violation of the Fourteenth Amendment of the United States Constitution Procedural Due Process, a judgment awarding Patrick Cullen Fahey III damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursement;

(iii)     on the third cause of action for breach of contract, a judgment awarding Patrick Cullen Fahey III damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and

loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)    on the fourth cause of action for breach of the covenant of good faith and fair dealing, a judgment awarding Patrick Cullen Fahey III damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(v)    on the fifth cause of action for negligence, a judgment awarding Patrick Cullen Fahey III damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vi)    on the sixth cause of action for promissory estoppel, a judgment awarding Patrick Cullen Fahey III damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vii)    on the seventh cause of action for declaratory judgment, a judicial declaration that (i) the outcome and findings made by Clemson be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's

suspension from Clemson be removed from his education file; (v) any record of the complaint against Plaintiff be permanently destroyed; (vi) Plaintiff be readmitted to Clemson if so desired; and (vii) Clemson's rules, regulations and guidelines are unconstitutional as applied; and

(viii)   awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

### JURY DEMAND

Patrick Cullen Fahey III herein demands a trial by jury of all triable issues in the present matter.

**Dated:   July 19, 2016**

**Plaintiff Patrick Cullen Fahey III**

**By:** _____

**200 Kingswood Way**
**Easley, SC 29640**
**864-884-5274**